UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                   :

HVN CLOTHING, INC. et al.,                 :

                      :

             Plaintiffs,         :

                      :           22-CV-27 (JMF)

      -v-                 :

                      :      OPINION AND ORDER

LOMEWAY E-COMMERCE (LUXEMBOURG)   :
LIMITED, d/b/a ZAFUL,           :

                      :

            Defendant.       :

                      :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       In this case, Plaintiffs HVN Clothing, Inc. and Harley Viera-Newton sued Defendant

Lomeway E-Commerce (Luxembourg) Limited, which does business as Zaful ("Zaful"), for

copyright and trademark violations. After the Court entered a preliminary injunction, the parties

reached agreement by e-mail on the terms of a settlement. The parties contemplated

memorializing their agreement in a formal settlement agreement, but they never did because

Zaful balked. Plaintiffs now move to enforce the terms of the parties' agreement. *See* ECF No.

46. For the reasons that follow, the Court GRANTS Plaintiffs' motion.

**RELEVANT FACTS**

       Plaintiffs sell high-end swimwear and women's clothing under a federally registered

HVN mark and using a popular HVN Cherry Print in which HVN owns the registered copyright.

*See* ECF No. 12, at 2-4. On January 3, 2022, they brought this lawsuit, alleging claims against

Zaful under the Copyright Act, the Lanham Act, and New York State law. *See* ECF No. 1

("Compl."); *see also* ECF No. 47 ("Pl.'s Mem."), at 2. Three days later, Plaintiffs moved for a

temporary restraining order and preliminary injunction, *see* ECF No. 11, each of which the Court

granted after Zaful failed to appear, *see* ECF Nos. 24, 29.  Armed with the Court's Orders,

Plaintiffs asked Apple, Inc. to remove Zaful's app, titled "Zaful – My Fashion Story," from the

Apple App Store, *see* ECF No. 48-2, which Apple apparently did.

      In the weeks that followed, counsel for Zaful appeared and the parties began to discuss

settlement terms by e-mail.  *See* ECF No. 48-3; ECF No. 48-4 ("Counsel E-Mails"), at 4-6; *see*

*also* Pl.'s Mem. 3; ECF No. 50 ("Def.'s Opp'n"), at 1.  On February 17, 2022, Plaintiffs' counsel

sent defense counsel an e-mail proposing settlement on the following terms:

1. Payment by Defendant to Plaintiff . . . of $150,000.00 on or before February 28, 2022.

2. Mutual release of all parties, along with [several affiliates of Zaful] . . . cover[ing] conduct through and including the date of the Agreement.

3. Defendant's consent to a judgment and permanent injunction on terms substantially similar to the Preliminary Injunction now in place. . . .

4. Plaintiff will agree, promptly upon agreement to these terms in principle, to notify Apple by email that the parties have resolved their differences in principle and that Plaintiff has no objection to Apple's reinstatement of the ZAFUL App. . . .

Counsel E-Mails 3.  Significantly, Plaintiffs' counsel stated that "[i]f these terms are acceptable

to your client, . . . we will have an enforceable agreement."  *Id.*  At the same time, he asked

defense counsel to prepare "definitive documentation" and expressed hope that this could be

"done in a few days."  *Id.*  He noted, however, "that the parties' obligations under points 1 and 4

above are effective upon email agreement, and not contingent on the final documentation."  *Id.*

      Later the same day, Zaful's counsel responded with "only" one proposed "edit": addition

of "another affiliate" to the mutual release.  *Id.* at 2.  Zaful's counsel stated that, "with that" one

edit, Zaful "accepts and we can start making arrangements for the payment.  If Plaintiff is set,

please inform Apple of the agreement in principle to get that ball rolling."  *Id.*  The next day,

February 18, 2022, Plaintiffs' counsel responded that "Plaintiffs agree" and thanked defense

counsel for his collaboration on "this agreement." *Id.* Later that day, Plaintiffs fulfilled the fourth term of the parties' agreement by e-mailing Apple, copying Zaful's counsel, that the parties had "reached a confidential settlement in principle of all litigation and disputes between them" and stating that they had "no objection to Apple's immediate reinstatement of the ZAFUL App." ECF No. 48-6. A week later, on February 25, 2022, Zaful fulfilled the first term of the parties' agreement by wiring $150,000 to Plaintiffs; defense counsel e-mailed Plaintiffs' counsel "wire confirmation for the settlement payment." ECF No. 48-5.

Thereafter, the parties began to exchange drafts of a formal settlement agreement. Zaful's counsel shared an initial draft on February 28, 2022. ECF No. 48-7. Plaintiffs provided comments and proposed edits the next day, March 1, 2022. ECF No 48-8. On March 1, 2022, and again on March 8, 2022, Zaful requested additional time to "finalize settlement." ECF Nos. 36, 39. Plaintiffs consented to both requests. Pl.'s Mem. 4-5. On March 10, 2022, Zaful's counsel shared a revised draft of a "proposed settlement agreement, which include[d] Plaintiff's edits and Defendant's input." ECF 48-9, at 2. It proposed several new changes, *id.* at 21-24, the vast majority of which Plaintiffs' counsel "accept[ed] insofar as possible" later the same day, ECF 48-10, at 2. Plaintiffs' counsel took issue with only two of Zaful's proposed edits: first, a provision prohibiting Plaintiffs from filing suit against Zaful "if Defendant removes the alleged [infringing] product within three (3) calendar days"; and, second, a provision permitting the recovery of attorney's fees for breach of the agreement. ECF 48-10, at 2, 51-52. Most relevant for present purposes, Plaintiffs' counsel accepted all of Zaful's proposed edits to the language of the proposed releases in the draft settlement agreement. *See id.* at 51.

But Zaful did not accept this final proposal. Instead, on March 15, 2022, before responding to Plaintiffs' March 10, 2022 e-mail, Zaful filed an Answer and asserted

counterclaims seeking invalidation of Plaintiffs' copyright and cancellation of their trademark. *See* ECF No. 41, at 13-22.  Plaintiffs took the position that Zaful's counterclaims were a breach of the parties' settlement agreement, given the terms of the release, and threatened to move for sanctions.  *See* ECF No. 48-12, at 4.  In a telephone call, Zaful's counsel maintained that the parties' agreement was binding on Plaintiffs, but not on Zaful.  *See id.* at 2.  In an e-mail dated March 23, 2022, he doubled down, stating (albeit without elaboration) that Plaintiffs had "breached the settlement in principle."  ECF No. 48-12, at 3.  Be that as it may, on March 28, 2022, after Plaintiffs had served a draft sanctions motion and "safe harbor" letter pursuant to Rule 11(c) of the Federal Rules of Civil Procedure on Zaful's counsel, *see* ECF No. 48-11, Zaful voluntarily dismissed its counterclaims.  ECF No. 45.  This motion followed.

## DISCUSSION

It is well established that "[a] district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (citations omitted).  Indeed, "[i]t is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 445 (2d Cir. 2005).  Put differently, "[w]hen a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that . . . choice simply because his assessment of the consequences was incorrect" and he later develops a case of settler's remorse. *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007).  "[T]he mere fact that the parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event." *V'Soske v. Barwick*, 404 F.2d 495, 499 (2d Cir. 1968).  So too, a preliminary settlement

agreement may be binding even where it is designated by the parties only a settlement "in principle." *Krauth v. Exec. Telecard, Ltd.*, 890 F. Supp. 269, 293 (S.D.N.Y. 1995).

The Second Circuit has identified four factors that a court should consider in determining whether the parties "intended to be bound in the absence of a document executed by both sides":

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).  These factors — known as the *Winston* factors — "may be shown by oral testimony or by correspondence or other preliminary or partially complete writings." *Id.* at 81 (internal quotation marks omitted).  Although the Second Circuit has described the first factor as the most important, *see, e.g.*, *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989), no single factor is dispositive, *see, e.g.*, *Ciaramella v. Reader's Dig. Ass'n*, 131 F.3d 320, 323 (2d Cir. 1997).  Ultimately, all four factors must be considered in light of the entire context of the case, mindful that the parties' objective intent controls. *See Winston*, 777 F.2d at 81; *see also, e.g.*, *Klos v. Polski Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) (noting that it is the parties' "objective intent . . . that controls" because a court cannot divine their "secret or subjective intent").

Applying these standards here, the Court concludes that Plaintiffs are entitled to an order enforcing the parties' settlement notwithstanding Zaful's apparent change of heart.  As Zaful itself concedes, the second *Winston* factor strongly supports that conclusion, as "both parties partially performed" the preliminary agreement, Def.'s Opp'n 7, Zaful by paying Plaintiffs $150,000 and Plaintiffs by reporting the parties' agreement to Apple.  The fourth factor weighs heavily in favor of enforcement as well because the parties' agreement was, in fact, committed to writing — in the form of the parties' e-mails of February 17 and 18, 2022. *See* Counsel E-Mails

5

2-3.  Zaful argues otherwise by pointing to Plaintiffs' request "for the preparation of 'definitive documentation,'" Def.'s Opp'n 9-10 (quoting Counsel E-Mails 3), but that request speaks to the first *Winston* factor, not to the fourth.  *See, e.g.*, *In re Elysium Health-ChromaDex Litig.*, No. 17-CV-7394 (LJL), 2022 WL 1156181, at *8-9 (S.D.N.Y. Apr. 19, 2022) (finding settlement terms set forth in e-mail constituted a written agreement for purposes of the fourth *Winston* factor); *accord Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04-CV-1621 (KMW) (AJP) 2005 WL 1377853, at *9-10 (S.D.N.Y. June 9, 2005).

So too, the third *Winston* factor — whether the parties had "agreed on all material terms" *Ciaramella*, 131 F.3d at 325 — favors enforcement.  The parties' e-mails of February 17 and 18, 2022, contained all material terms of the settlement, including the monetary and injunctive relief, Plaintiffs' commitment to contact Apple, and a mutual release.  In arguing otherwise, Zaful contends that the parties did not actually agree on the precise terms of the release, Def.s' Opp'n 7-9, but the record as a whole demonstrates otherwise.  The February 17 and 18, 2022 e-mails specified the who (namely, the parties and several named affiliates of Zaful) as well as the what and when (namely, all "conduct through and including the date of the Agreement") of the release.  Counsel E-mails 2-3.  And although the parties thereafter negotiated the specific language of the release in the formal agreement, the terms of Zaful's final version (sent on March 10, 2022) — to which Plaintiffs assented — aligned with the terms of the parties' original e-mail agreement.  *Compare* Counsel E-Mails 2-3, *with* ECF No. 48-10, at 51.  It follows that the third *Winston* factor also favors enforcement of the parties' agreement.  *See, e.g.*, *Galanis v. Harmonie Club N.Y.*, No. 13-CV-4344 (GHW), 2014 WL 4928962, at *10 (S.D.N.Y. Oct. 2, 2014) (finding that the parties had "reached an agreement as to all of the material terms" where their oral agreement and their later draft formal agreement were "substantively consistent").

The cases cited by Zaful in support of its argument on the third *Winston* factor are easily distinguished. In *Grgurev v. Licul*, No. 15-CV-9805 (GHW), 2016 WL 6652741 (S.D.N.Y. Nov. 10, 2016), for example, "none of the initial emails exchanged . . . detailed — or even mentioned — the scope of release." *Id.* at *6. In *Velazquez v. Yoh Servs., LLC*, No. 17-CV-0842 (CM), 2017 WL 4404470 (S.D.N.Y. Sept. 25, 2017), the parties agreed by e-mail to "a full general release of all Defendants and affiliates" and a "release of [Plaintiffs'] claims." *Id.* at *1. In refusing to enforce the parties' agreement, however, the court made no mention of the release; instead, it relied on the imprecision of a different term and other evidence of "an intent to further negotiate the details." *Id.* at *3. In *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329 (S.D.N.Y. 2006), the plaintiff's counsel expressed explicit disagreement about the terms of the release in conversation with the defendant's counsel, who admitted that, "before [the defendant] purportedly 'accepted' [the plaintiff's] 'offer,' it was aware that the parties had very different understandings as to the scope of [the plaintiff's] proffered release." *Id.* at 338. And finally, in *Hand v. N.Y.C. Hous. Pres. & Dev.*, No. 11-CV-1076 (RRM) (JO), 2017 WL 9481012 (E.D.N.Y. June 27, 2017), *report and recommendation adopted*, No. 11-CV-1076 (RRM) (JO), 2017 WL 4296751 (E.D.N.Y. Sept. 25, 2017), the moving party sought to add several materials terms to the parties' initial agreement. *See id.* at *4.

That leaves only the first, and admittedly most important, *Winston* factor: whether there was an express reservation of the right not to be bound in the absence of a writing. *Winston*, 777 F.2d at 80. It is the closest call, if only because Plaintiffs' February 17, 2022 e-mail stated that two of the four material terms would be "effective upon email agreement, and not contingent upon documentation," Counsel E-Mails 3, arguably creating a negative implication that the other two terms were not binding absent the formal agreement. But "[c]ontracts of preliminary

commitment characteristically contain language . . . establishing conditions such as the preparation and execution of documents," and it is well established that "[s]uch terms are by no means incompatible with intention to be bound." *Tchrs. Ins. & Annuity Ass'n Am. v. Tribune Co.*, 670 F. Supp. 491, 500 (S.D.N.Y. 1987). Ultimately, "it is the intent of the parties that will determine the time of contract formation," and Zaful's "words and deeds," taken together, confirm its intent to be bound by the agreement in principle. *Winston*, 777 F.2d at 80 (internal quotation marks omitted); *see also Arcadian Phosphates*, 884 F.2d at 72-73 (noting that where parties had agreed "that their agreement was binding," this indicated an intent to be bound). Among other things, Plaintiffs' February 17, 2022 e-mail explicitly stated that, if Zaful accepted the proposed terms, the parties would "have an enforceable agreement," and Zaful (subject to one proposed edit, to which Plaintiffs agreed) "accept[ed]" without qualification. Counsel E-Mails 2-3. Additionally, the very next day, Zaful remained mum when Plaintiffs performed their obligation under the agreement and e-mailed Apple to report that the parties had "reached a confidential settlement in principle of all litigation and disputes between them." ECF No. 48-6. And one week later, Zaful itself performed, with counsel e-mailing confirmation of the "settlement payment." ECF No. 48-5. Perhaps most telling, Zaful's counsel asserted in an e-mail on March 23, 2022, that Plaintiffs had "breached the settlement in principle," ECF No. 48-12, at 2, an accusation that makes sense only if Zaful itself viewed the parties' preliminary agreement as binding and enforceable.

In any event, even if first factor weighed in Zaful's favor, it would weigh only slightly in its favor and not enough to tip the balance of the other three factors. *See, e.g.*, *Powell*, 497 F.3d at 131 (affirming a decision to enforce a settlement where "at least three of the four factors favor[ed]" enforcement); *Garra v. Metro-N. Commuter R.R.*, No. 17-CV-1293 (ALC) (SN), 2021

WL 1536499, at *13 (S.D.N.Y. Feb. 12, 2021) (enforcing an agreement despite finding that "the presence of terms remaining to be negotiated . . . weighs strongly in favor of non-enforcement"), *report and recommendation adopted*, No. 17-CV-1293 (ALC) (AN), 2021 WL 117254 (S.D.N.Y. Mar. 29, 2021); *Jackson v. N.Y.C. Dep't of Educ.*, No. 10-CV-9193 (DLC), 2012 WL 1986593, at *2 (S.D.N.Y. June 4, 2012) (enforcing a settlement where "three of [the *Winston* ] factors weigh in favor of enforcing the settlement agreement" and "[t]he fourth factor is essentially neutral, and does not outweigh the conclusion suggested by the other factors"); *Pretzel Time, Inc. v. Pretzel Int'l, Inc.*, No. 98-CV-1544 (RWS), 2000 WL 1510077, at *4 (S.D.N.Y. Oct. 10, 2000) (enforcing an agreement where "three of four [factors] favor enforce[ement]); *cf. Hand*, 2017 WL 9481012, at *4 (declining to enforce a settlement where "the first factor only minimally favor[ed]" enforcement "and all of the others favor[ed]" non-enforcement).  Thus, Plaintiffs' motion to enforce the parties' settlement is GRANTED.  The Court will give the parties two weeks to negotiate and execute definitive settlement documents, including a proposed consent judgment and permanent injunction "on terms substantially similar to the Preliminary Injunction."  Counsel E-Mails 3.  If the parties have not done so by **November 4, 2022**, the Court will sign and enter the proposed Judgment and Permanent Injunction attached to Plaintiffs' Notice of Motion, *see* ECF No. 46-1, which contains "terms substantially similar to the Preliminary Injunction," Counsel E-Mails 3.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to enforce the parties' settlement is GRANTED.[1]  If the parties have not executed definitive settlement documents and filed an

---

[1]     In their reply memorandum of law, Plaintiffs assert in passing that "Plaintiffs' claims also carry attorney's fees when — as here — a Defendant litigates unreasonably."  ECF No. 51, at 1 (citing *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 764 F. App'x 39, 41-42 (2d Cir.

agreed-upon proposed consent judgment and permanent injunction by **November 4, 2022**, the

Court will sign and enter the proposed Judgment and Permanent Injunction attached to Plaintiffs'

Notice of Motion.  *See* ECF No. 46-1.

       The Clerk of Court is directed to terminate ECF No. 46.


       SO ORDERED.

Dated: October 21, 2022
      New York, New York

                                    JESSE M. FURMAN
                            United States District Judge

---

2019) (summary order)).  To the extent that even constitutes a request for fees, the Court declines
to entertain it.  *See, e.g.*, *N.J. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6173 (JMF), 2021 WL
965323, at *13 n.15 (S.D.N.Y. Mar. 15, 2021) ("Arguments raised for the first time in a reply
brief . . . need not be considered." (citing cases)).  Moreover, the sole case cited by Plaintiffs,
affirming an award of fees under the Lanham Act and Copyright Act, is inapposite here.